### THE KENTIGERN.

(District Court, E. D. New York. January 20, 1900.)

1. SEAMEN—ASSAULTS BY OFFICERS—SEVERANCE OF CONTRACT—WAIVER.
    Seamen on a British vessel, by making no complaint of assaults on them by their officers, and failing to announce a severance of their contracts of hire at the first port thereafter touched, at which there is a British consul, —making such announcement only after the vessel had been some time at the next port,—are deemed to have condoned the wrongful acts, so far as they affect continuance of such contracts.

2. SAME—ACTION FOR SERVICES—JURISDICTION.
   An action for services of a seaman, based on his contract, broken by
   assault on him by the master of his vessel, a British ship, within the police
   limits of the United States, may be entertained by the federal court within
   whose jurisdiction the assault was made.

Hyland & Zabriskie, for libelants.
Convers & Kirlin, for claimants.

THOMAS, District Judge. Four foreign seamen filed the libel
herein for services rendered the British ship Kentigern under a con-
tract made in December, 1898, which required such services for the
entire term of two years. While the ship was at the port of New
York, these libelants applied to the British consul for release from
the service on account of the alleged brutality of the officers of
the vessel; but that officer, after investigation, denied the applica-
tion, directed the libelants to return to the ship, and requested
this court to decline jurisdiction of the matter. Each libelant has
testified fully to occasions when he was subject to an unmerited as-
sault or assaults on the part of the captain or other officer of the
ship. These instances, save one, preceded the arrival of the ship
at Philadelphia, where she loaded, whence she sailed to New York
and went on the dry dock. She reached the last-named port on
July 20, 1899, and sailed therefrom August 9th, after seizure on Au-
gust 8th. None of the libelants announced a severance of the stipu-
lated relation at Philadelphia, nor even at New York, until the ship
had been some days in port; and none of them left the ship, as the
evidence is understood, until after the 1st of August.

It is considered that a seaman who conceives that his contract
for service is abrogated by the tortious act of the master or other
officer of a ship should act on such conception of his rights at the
earliest reasonable opportunity, and, if he suffer a suitable occasion
to lapse, he should be deemed to have condoned the wrongful act,
so far as the same affected the continuance of the contract. In
other words, his conduct is inconsistent with the assertion of a
breach. This doctrine may be subject to the modification that a
seaman may continue aboard until the ship reaches the home port,
or a port of the jurisdiction to which the ship belongs. But if a
British ship touches at a foreign port where there is a British con-
sul, to whom protest of the officers' behavior may be made, the sea-
man should declare at that port his option to avoid the contract.
He may not hold in abeyance the exercise of this right until at a
later time a port shall be reached which he prefers, as a more con-
venient port for the purpose of severing his connection with the
ship. Why did not the libelants accuse the officers at the port of
Philadelphia? Why did they not seek release at that port? Why
did they not leave the ship at that port? The wrongs, save in a
single instance, had been done. The contract had been vitiated, at
their election. Their continuance on the ship, after full opportunity
to leave it, was an election to regard the contract as unbroken.
Even after arrival at New York they enjoyed the leisure incident
to the dry-docking of the ship, and were unmindful of past wrongs

for some days. Such conduct does not accord with the promptitude that should be required of a person who would annul a contract for personal services on account of physical harm tortiously received from the master in the course of the service.

The libelant Von Diesen states that the master assaulted him in the port of New York. This was within the police limits of the United States and the jurisdiction of this court. If the present action were for the purpose of recovering damages for such assault, it would be entertained justly, and an action for services based upon a contract broken by the same wrongful act may be entertained with propriety, notwithstanding the protest of the British consul. The alleged violation of the police laws would give the offended seaman full right to leave the ship, and demand enforcement of his rights in the local tribunal. It is true that he waited in the port some days before availing himself of the right to avoid the contract. But the evidence on this point is meager. Hence the question whether such delay condoned the alleged assault is left for determination after trial on the merits.